Thank you, your honor. Good afternoon. May it please the court, I am Daniel Kaplan. I am representing the appellant in this case, Carl Courtright, and I will be keeping an eye on the clock. I will try to save about two minutes for my rebuttal time. Elements can't be surplusage. Means of committing an element can be surplusage, but elements themselves cannot be surplusage, and that is a crucial point in this case. As your honors know, Mr. Courtright's life sentence rests on the premise that his Illinois state offense is a match for a federal sex offense listed in section 3559 E. The government is essentially asking this court to treat as elements of that Illinois offense things that the I believe is the fatal flaw in the government's divisibility theory. Could I just interrupt you, because I think to get there, you have to show that he couldn't have made this claim under the Seventh Circuit's old rule, and I had a little bit of trouble understanding what Woods meant, and so could you just walk me through how you explain why he couldn't have succeeded on this argument under Woods? Yes, certainly, your honor. The bulk of the of the Woods opinion deals with basically agreeing with the proposition that was confirmed in de Camp. That's why I'm not saying de Camp is the crucial case. The crucial case is Mathis, and there's a particular part of Woods that says a a crime is divisible if it's a single crime, but with multiple modes of commission, and modes of commission is essentially the same thing that the Supreme Court later rejected as a basis for divisibility in Mathis, and it's not a matter of extracting a little bit of dicta. I did cite a district court opinion, the Johnson opinion, which follows that portion of Woods and finds that there's a particular crime which is a single crime, but has multiple modes of commission, and under Woods that was found to be divisible. So how would Woods, under Woods, how would they have divided this up and looked at the indictment, and what would they have come up with as the crime in Woods that would be different than, and that would still preclude the claim? Well, I expect it would have gone along the lines of what the government is arguing in this appeal. I expect they would have looked at, and of course the crucial language is the definition of the phrase sexual conduct in the Illinois statute, and in looking at the separate language of the parts of the body and the situation where it can be any part of the body, if it's a certain age victim, they could have said well those are various different modes of committing this sexual conduct, and decide which mode of commission was employed. Essentially what the government is trying to do in this appeal. Counselor, could I take you back one step? I think Judge Friedland used the phrase about why could you not have succeeded under Woods, but isn't the standard really of why you would have even had a shot at it even if you lost, because the fact that you lose under 2255 doesn't automatically let you get in under 2241, so I would ask the question in terms of given Woods, why would you have been a dead loser to even try to to get out of the life sentence? Because if you have even a shot at it, I thought that would preclude 2241. I understand, I believe I understand the question your honor, and I believe the basis for the escape hatch in this case is very very similar to Allen versus Ives, and Allen versus Ives, this court said that there was no procedural shot, there was no unobstructed procedural shot for that appellant, because that person at the time was in the Second Circuit coming out of Connecticut, the Second Circuit had a case, had a jurisprudence represented by an opinion called Beardsley, which did employ divisibility analysis, but it did it in a way that essentially made it pretty clear that the person would have lost his divisibility claim or his indivisibility claim, so I believe the answer to your question is if there's circuit precedent that allows you to make a divisibility argument and would entertain a conducting divisibility analysis that makes it clear you're gonna lose, you would have lost that, that does mean you didn't have an unobstructed procedural shot, so I do think Allen v. Ives is dealing with quite a similar type of situation. And Mr. Kaplan, to follow up on that, as I read the district court's order, the district court didn't really have, technically it had Allen v. Ives before, but not really, because I think Allen versus Ives was decided two days before this order was issued, and much of the district court was really aware of it, and there's a line in the order that I think was bad for you in the district court, but I think is now very helpful for you before us. It's on ER 10, lines 12 and 13, where the district court wrote, innocence of sentencing enhancement is insufficient to satisfy the actual innocence prong of the escape hatch. I take it your argument is under Allen versus Ives, that's just dead wrong. Absolutely, yes, your honor, and certainly they can be, he can be forgiven, I guess, it was three days before, I think, but it is a mistake, and it makes a big difference here. So let me ask you this, let's say I'm with you with everything you said. For me, just me, the hardest part of this case, if you're right, what do we do next? Because, and if you could spend a moment on that, because I understand, you touched on it in your very complex issue about if you win before us, which district court gets the handoff? Either right away or through a transfer. Could you talk about that for a little bit? Absolutely, yes, your honor, and I have spoken to several colleagues who've dealt with these cases more than I have, and they've told me about examples where either of these two things happen. I'm suggesting it should go back to the District of Arizona, and the District of Arizona should conduct a sentencing, and that they can do that and should do that. I believe that's the better course. I have, I know there are cases where things were sent to the, to the sentencing district in another circuit. I cited one case called Bry, where the judge to whom it was sent by the 2241 court said, I'm not, I'm not going to accept this. I don't take orders from a coordinate district court. So that's one difficulty you avoid if you don't do that, if you do what I'm suggesting. There's other knotty problems, as the Seventh Circuit put it in Webster, that you avoid by doing what I'm suggesting. As the Seventh Circuit pointed out, it's a little complicated to think about if you don't do what I'm suggesting, and you have it sent back to the sentencing court in Illinois, they're governed by Seventh Circuit law, and they're trying to follow the mandate of this court, and then it would be appealed to the Seventh Circuit, which is applying its own law, but, but somehow having to apply this court's law. So I believe you avoid a lot of difficult problems if, and if you do it the way I'm suggesting, and I believe jurisdiction is pretty clear under 2241, under 2243, there's broad discretion to to craft a remedy, and I think that there is clear authority for the court to do that. I would like to try to save the balance of my time. Very well, let's... Could I ask a quick question? The other question I had about, you know, what do we do if, if we agree with you that the escape hatch works, then why should we decide the, the actual merits question? The, if the district court had thought the escape hatch worked, then we would have its ruling on the 2241 itself. So if we agree with you through the escape hatch, should we simply tell the district court, now you decide the 2241 case? I think you could do that. I would say that it would save judicial time and effort, since it's really a purely legal issue, that this court could simply go ahead and decide that. But I, I don't know any reason you couldn't do it that way, and I will try to save the balance of my time. Very well, Mr. Kappen, we'll give you an extra minute. So, Matthew, Deputy, if you could give him two minutes on rebuttal. All right, Council for the United States, you may proceed. Okay, may it please the court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson, on behalf of the warden. The defendant, excuse me, Courtland, Court Wright, can't demonstrate that he meets the escape hatch, because he can't show he did not have an unobstructed procedural shot in the Seventh Circuit, at the, both at the time of his direct appeal, and at the time of his 2255. The Seventh Circuit in Wood, they, as they subsequently explained, the Supreme Court adopted the Seventh Circuit's analysis of the wood used in Day Camp, and Day Camp and Mappis are basically saying the same thing. The Seventh Circuit, in an unpublished opinion recently, stated unequivocally that divisibility analysis was available in the Seventh Circuit since at least 2009. Just because there was divisibility analysis doesn't mean it's the divisibility analysis that Mappis instructs, right? I mean, Mappis wouldn't have needed to exist if all the circuits had understood Day Camp. Right, and there were different circuits were treating Day Camp differently. The Seventh Circuit, their conclusion is they were following the divisibility analysis in, in, that was in the body of Day Camp, as opposed to that I think was footnote two in Day Camp. But the Seventh Circuit has unequivocally stated that this analysis was available, and he could have made these arguments in the Seventh Circuit. And in any event, the, even if you get past that claim, can I just ask, how is that? How can we have that interpretation of wood? When wood relied on I think it's called Nihawan, which then Mappis said was wrong, a wrong way to look at divisibility. The Seventh Circuit interpreting their own law concluded that that divisibility analysis that was in Mappis is the same as they were using. I don't think you can second guess what the Seventh Circuit views of its own law is. And they, like I said, they unequivocally stated that divisibility analysis was established no later than 2009, and that Mappis didn't change things in the Seventh Circuit. If you have that as your baseline, court right candidate can't demonstrate that he did not have an unobstructed procedural shot. And in any event, he also cannot demonstrate that he was actually innocent, because the definition, Illinois' definition of sexual contact is divisible. It's divisible because it sets forth, it has clauses that set forth different elements that have to be met. In one instance, the element is the specific body part touched has to be proven. In other words, it's an element of the crime. And the other set, the age of the victim has to be proven. It has to be proven that the victim's under the age of 13. And in that scenario, any body part touched is a crime. The Illinois cases make clear that those are distinctions that matter. So that that definition is divisible. So let me ask you this. I mean, I was in a USA once and it's never fun to inherit a case from a district case that your office had nothing to do with. And you've got to come up here and try to explain what happened. But here, the district court did not really have the benefit of Allen versus Ives. And there's that line in the order, which I read to Mr. Kaplan, I think he would agree was, in hindsight, was wrong for the court to say that. Why wouldn't we just send this case back to the district court and say, look, you didn't have the benefit of Allen versus Ives, Allen versus Ives says this, and leave the district court and leave it to the parties to decide if they want to, what they want to brief if they want to brief the issue. Mr. Kaplan is suggesting that could be resentenced there in Arizona or the case should be transferred. I'm assuming you would want the case transferred to Southern District of Illinois. I imagine you probably don't want to deal with a resentencing in this case. You didn't live it. And there are probably there are some concerns about having another district resentencing defendant when the crime wasn't committed there. So I'm just wondering, why not just do that? This case can be very complicated or it can be very simple. Why not just take the simple road out? I agree that the district court, as a practical matter, did not have the basis, basically applied the wrong standard. I agree with that. I think this court can affirm on any basis shown in the record. And the warden's position is the record demonstrates that the defendant, excuse me, court right can't prove that he didn't have an unobstructed procedural shot. I don't think you need to get into the thorny issue of the divisibility analysis. He had a shot. He could have made these arguments in the Seventh Circuit and the but if the if the court, I also understand if the court, do you think the analysis under wood would be exactly the same as the merits analysis you're offering now? Well, I think my merits analysis is correct, actually. So but I'm asking when you say they would, he would have had a shot. Are you saying he could have made the exact argument you're making now? Yes. And so I think if we disagree with you now about how it's divisible in your theory, then should we assume the Seventh Circuit would have disagreed also? I guess it depends on why you disagree with the analysis. If it's a matter of substance. I mean, what if we think that there are means and not elements? I think the way the Seventh Circuit has described the case law, that argument would have been available and they, if in fact they are means, and I'm wrong, they are means and not elements, presumably the Seventh Circuit would reach that conclusion. And would have reached that conclusion back in 2009 and 2012. And the theory is that Mathis didn't change anything as far as the Seventh Circuit is concerned. Correct. And makes the Seventh Circuit has said that. But so if we disagree with you and think these are means, then he gets through the procedural shot part. And then we're back to disagreeing with you again, I guess. Then he wins. I mean, is there any other way through this? If you disagree with me on the unobstructed shot, then you do have to get into the divisibility. And if you disagree with me on the divisibility. Yeah, it seems like we need to look at your divisibility analysis to understand your unobstructed shot argument. Again, I would argue no, if in fact Mathis didn't change Seventh Circuit law. But that just brings us to it being the same as your argument now again. Well, no, if in fact the Seventh Circuit is correct about their own law and Mathis didn't change anything. He had the he had the ability to make that argument. You know, in other words, the result in the Seventh Circuit would have been the same both pre-Mathis and post-Mathis. If in fact, as the Seventh Circuit has said, Mathis didn't change the law in the unpublished case. Yes, that's correct, Judge. So I'm always nervous to say this is the pronouncement of the Seventh Circuit when they didn't pronounce it. Is there another case we can rely on? I could not find published cases, another unpublished order where they make the same conclusion. And like I said, I would I would argue that Seventh Circuit judges know more about Seventh Circuit law than we do. But even within the bounds of Liscano, how do we know that what they're saying is Mathis did nothing in our court versus did nothing as to this person's claim, which isn't even really that well described in this very short mem dispo? I think you take the Liscano case at pace value where it says again unequivocally that the divisibility analysis was established no later than which was when the defendant's direct appeal was. Go ahead, please. I mean, the next sentence is that Liscano could have relied on Taylor itself. So maybe that has something to do with Liscano's version of this categorical approach argument. We don't know what Liscano's crime or argument was. I mean, maybe we know generally the crime. I don't remember. But I don't think we know enough about Liscano's theory to know why he could rely on Taylor. And did you mean Taylor or Woods, your Honor? Well, it says Taylor, it says. But Woods did not overrule a body of contrary precedent. Liscano could have relied on Taylor itself. Right. And in other words, I understand what they were saying was that. Oh. Even prior to Woods, the divisibility argument that ultimately the Supreme Court accepted in Mathis was an available argument in the Seventh Circuit. And it wasn't there was no Seventh Circuit case law that precluded a litigant from making that argument. If you lose, who should resentence him? I would I would argue that it has to be the jurisdiction where the crime occurred. I don't see how a court in Illinois would impose a sentence on a for a crime that was committed in the Southern District of Illinois. That's just basic jurisdiction. And I think this is a result of, you know, where this 2241 for sentencing issues is basically kind of putting a square peg in a round hole, actually. I agree. It also means that it would be almost adventitious where the sentencing, the new sentencing would occur depending on where you were put in prison. You know, you might be a prisoner who says, I'm in a district, I'm in prison in a district that's really tough. I'll wait to bring my 2241 until I get transferred to a nicer district. If you start, in effect, shopping that way. Let me ask my colleagues. Does anyone have any more questions? Judge Boggs, Judge Friedland. All right. Thank you very much, counsel, for your argument today. Mr. Kaplan, you got two minutes. Thank you, Your Honor. Getting back to the procedural question that Judge Boggs asked and Judge Owens touched upon it. If you look at Allen v. Ives itself, it does confirm that's what they did there. In Allen v. Ives, the district court didn't have the benefit of Allen v. Ives, obviously, and said there's no jurisdiction in this context for a sentencing enhancement. And it was that appeal that became Allen v. Ives where this court said, actually, there is such a thing as actual innocence of a sentence enhancement. And then in Allen v. Ives, they didn't proceed to the merits. They remanded for the district court to address the merits. So I do think the answer to Judge Boggs' question is there is precedent for that. Allen v. Ives is precedent for that. And that would apparently be a perfectly appropriate thing for the court to do. On the question of did Mathis really change anything in the Seventh Circuit, another place I cited the Johnson district court opinion. Another place you could look is the government's brief in a case called U.S. v. Edwards. It's 836 F. 3rd, 831 Seventh Circuit, 2016. And it was briefed after there was an Eighth Circuit Mathis opinion, but before the Supreme Court reversed that Eighth Circuit opinion. And if you look on the government's brief around page 15, the government is basically saying this circuit in Woods has taken the side of the Eighth Circuit in Mathis and some other courts, contrary to this court's view, which turned out to be correct, about means versus elements. And the government makes a very clear statement that the law in the Seventh Circuit is the exact opposite of what Mathis in the Supreme Court held. So I do think that's another piece of evidence that shows Mathis really did change something significant as far as Seventh Circuit divisibility analysis relevant here. And as far as if you do get to the merits question, I do think the idea that there's different elements within the definition of sexual conduct is strongly refuted by the point I started out with, which is we have ICPO and Lewis in the Illinois Courts of Appeals saying anything beyond the phrase sexual conduct is mere surplusage. If anything beyond the basic phrase sexual conduct was a separate element, it couldn't possibly be surplusage. I welcome any questions from the court. Other than that, I have nothing further I need to say here. Looking at my colleagues, I think we're good. Thank you very much, counsel, to both of you for your arguments in this very interesting and complicated at times case. We appreciate both your arguments and your briefing here.
judges: Boggs, OWENS, FRIEDLAND